United States District Court
for the
Southern District of Florida

| | |
|---|---|
| The Genterra Group, LLC, Plaintiff, )<br>)<br>v.                                                      )<br>)<br>Sanitas USA, Inc., Defendant.        ) | Civil Action No. 20-22402-Civ-Scola |

### Order on Motion to Dismiss

This matter is before the Court upon the motion filed by Defendant Sanitas USA, Inc. ("Sanitas") to dismiss the amended complaint filed by Plaintiff The Genterra Group LLC ("Genterra") for breach of contract. (Def.'s Mot., ECF No. 15; Pl.'s Compl., ECF No. 6.) Genterra contends that Sanitas breached its right of first refusal over certain development opportunities by contracting with third parties to construct medical facilities without first notifying Genterra of the business opportunities. Additionally, Genterra asserts that Sanitas breached the restrictive covenants set forth in the agreement by directly employing Genterra's subcontractor to construct the new facilities, in violation of the non-solicitation and no hire clauses of their agreement, and by disclosing Genterra's proprietary information, in violation of the confidentiality clause. Genterra has responded to the motion (Pl.'s Resp., ECF No. 28) and Sanitas has filed a reply (Pl.'s Reply, ECF No. 30). Having reviewed the record, the parties' briefing, and the relevant legal authorities, the Court **grants in part** and **denies in part** Sanitas's motion. (**ECF No. 15**.)

### 1. Background.[1]

Genterra is in the business of finding, developing, and managing real property. (ECF No. 3 at 2.) Sanitas is in the business of operating medical facilities. (*Id.*) On February 14, 2017, Genterra entered into a multi-year master development agreement ("MDA") with Sanitas. (ECF No. 15 at 1.) The MDA allowed Sanitas to engage Genterra on a preference basis to acquire real property, and to design and build medical facilities according to Sanitas's specifications, and to lease such property and improvements to Sanitas. (*Id.* at 2.)

---

[1] The Court accepts Sanitas's factual allegations as true for the purposes of evaluating Genterra's motion to dismiss. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

  The MDA contained a right of first refusal clause that required Sanitas to present to Genterra business opportunities to operate a medical facility under the trade name "Clinisanitas" if the opportunity required the engagement of development services. (ECF No. 6-1 at 3, § 2.) The MDA describes development services as the acquisition, entitlement, design and building of a particular project. (*Id.* at 3, § 1.4.) Sanitas was responsible for identifying geographical areas in the United States within which it would seek to develop contractual arrangements with third party payors and managed care plans and operate medical facilities that deliver health care services to patients. (Am. Compl., ECF No. 6 at ¶12.) Once Sanitas identified a suitable area, Sanitas was required to deliver written notice to Genterra specifying the geographical boundaries, the number of facilities, timelines and completion dates, and proposed rental rates. (*Id.* at ¶ 13.) Genterra could then accept or decline to build and lease the facilities within thirty days of receiving the notice. (*Id.* at ¶ 14.) If Genterra timely accepted, Genterra was required to conduct an inspection of the area to identify specific areas for facilities and prepare and submit to Sanitas a preliminary report and analysis. (*Id.* at ¶ 15.) Once Genterra delivered the preliminary report to Sanitas, the MDA allegedly required Genterra to develop a definitive proposal for the acquisition, entitlement, design, building, and leasing of the completed project. (*Id.* at ¶ 16.) The obligations of both parties through this process were collectively referred to as development services. (*Id.* at ¶ 17.)

  Between the summer of 2017 and February 2019, Sanitas and Genterra worked together to build two facilities. (*Id.* at ¶ 28.) Genterra had also begun preparing proprietary information for Sanitas in connection with a third facility (together the "Initial Facilities"). (*Id.*) Since the completion of the Initial Facilities, Sanitas has developed and constructed at least twelve new operating medical facilities in Texas, Florida, and elsewhere in the United States (collectively the "New Facilities"). (*Id.* at ¶ 31.) However, Genterra alleges Sanitas cut Genterra out by failing to provide Genterra with notice of the business opportunity to provide development services for the New Facilities. (*Id.* at ¶ 32.) According to the amended complaint, Sanitas instead offered the business opportunities to third parties, in breach of the right of first refusal and the restrictive covenants provided by the MDA. (*Id.*)

  Moreover, during the development of the Initial Facilities, Genterra allegedly employed an architect, Daniel Perez and his firm, as a subcontractor. (*Id.* at ¶ 34.) Once the relationship between Genterra and Sanitas began to deteriorate, Genterra alleges Sanitas continued to communicate with Perez, propositioned Perez to circumvent Genterra and provide development services to Sanitas directly, and hired him for the New Facilities in violation of the

MDA's non-solicitation and no hire clauses. (*Id.* at ¶ 36.) Sanitas alleges Perez's website proves this as it lists Sanitas as a direct client as of 2018. (*Id.* at ¶ 38; ECF No. 28 at 6.)

Genterra further alleges that Sanitas utilized Genterra's proprietary information for its own general benefit in engaging other developers, including Perez, for development services on the New Facilities, in violation of the MDA's restrictive covenants. (ECF No. 6 at ¶ 40.) Particularly, Genterra alleges it developed proprietary information for four of the New Facilities located in Florida ("Florida Facilities") and delivered the proprietary information to Sanitas in anticipation of providing development services for the Florida Facilities. (*Id.* at ¶ 49.) On June 26, 2018, Sanitas sent an email to Genterra and Perez stating "[b]ased on our conversation attached please find the drawings, please advise if you have these, or you already worked on these." (*Id.* at ¶ 43.) The email contained blueprints for the Florida Facilities in Orlando. (*Id.*) Perez allegedly responded to the email, stating "we will review these programs and do code analysis." (*Id.*) On July 3, 2018, Sanitas sent Genterra and Perez another blueprint and included the street addresses for all four of the Florida Facilities. (*Id.* at ¶ 45.) On July 10, 2018, Genterra sent an email to Sanitas stating "[w]e are moving forward with design and permits for . . . Florida Projects as directed and discussed in our meeting today." (*Id.* at ¶ 47.) Without Genterra's knowledge or consent, Sanitas purportedly utilized Genterra's proprietary information and employed third parties instead of Genterra to develop the Florida Facilities. (*Id.* at ¶ 57.)

Genterra now complains that Sanitas breached the right of first refusal by providing business opportunities to third parties without first notifying and making them available to Genterra. Additionally, Genterra alleges that by disclosing proprietary information to third parties and directly employing Perez for the construction of the New Facilities, Sanitas breached the following restrictive covenants set forth in the MDA: (i) confidentiality clause, (ii) non-solicitation clause, (iii) no hire clause, (iv) non-circumvention clause, and (v) right of injunction clause.

**2. Legal Standard.**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an

unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

Yet, where the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed. *See Twombly*, 550 U.S. at 557. "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

### 3. Discussion

#### A. Count I—Breach of Contract

##### a. Breach of Right of First Refusal

In the complaint, Genterra alleges Sanitas breached the right of first refusal by offering business opportunities to other developers, including the subcontractor, without first presenting the business opportunities to Genterra. (ECF No. 6 at ¶ 59.) In its motion, Sanitas maintains the right of first refusal only requires Sanitas to present Genterra with business opportunities that involve the engagement of development services as described in Section 1.4 of the MDA. (ECF No. 15 at 4.) After a careful review of the record and the applicable law, the Court finds Genterra has sufficiently alleged a breach of the right of first refusal clause in the MDA.

The MDA's right of first refusal clause provides:

> In the event that Sanitas USA identifies a business opportunity to operate a medical facility under the trade name "Clinisanitas" within the United States of America (the "Business Opportunity"), that requires the engagement of the Development Services as described in Section 1.4 herein, then Sanitas USA shall first present such Business Opportunity and requirement for Services to Genterra by providing written notice. Such written notice (a "Requirement for Services Notice") that shall include: (i) the Catchment Area, and (ii) a right of first opportunity to permit Genterra to undertake the Services for such Business Opportunity.

(ECF No. 6-1 at 3–4, § 2.)

According to Sanitas, it was only obligated to present a business opportunity to Genterra if that business opportunity (1) required Genterra to purchase the subject property, (2) construct a medical facility on the property, and (3) lease the developed property to Sanitas. (ECF No. 15 at 5.) Sanitas argues the amended complaint fails to allege that any of the New Facilities were opportunities that required Genterra's development services. (*Id.*) Sanitas contends by failing to allege that any of the New Facilities required development services, Genterra has not sufficiently pled a breach of the MDA. (*Id.*)

The Court finds Sanitas's argument unavailing. Under Florida law, the elements required to establish a breach of contract claim are: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach. *Kennedy v. Deschenes*, No. 17-60110-CIV, 2017 WL 2223050, at *5 (S.D. Fla. May 19, 2017) (Scola, J.). Here, it is alleged that Sanitas owed a duty to inform Genterra of business opportunities that required development services. According to the amended complaint, Sanitas has developed and constructed at least twelve new operating medical facilities around the United States, including in Florida. (ECF No. 6 at ¶ 31.) Although Genterra did not expressly allege that each of the twelve projects required development services, Genterra has adequately pled that Sanitas breached the contract by failing to inform Genterra of any of these business opportunities. (*Id.* at ¶ 32.) Moreover, Genterra's allegation that Sanitas developed the medical facilities necessarily implies that the properties did not have medical facilities, which means that Genterra, if given the opportunity, might have chosen to develop the medical facilities. As a result, Genterra has adequately alleged that it suffered damages by losing out on its bargained-for right for a first opportunity to develop medical facilities on the property.

  b. *Breach of Restrictive Covenants*

  In its motion, Sanitas asks the Court to dismiss Genterra's amended complaint because Genterra failed to plead a legitimate business interest justifying the restrictive covenants set forth in the MDA. Under Florida law, restrictive covenants are valid restraints of trade or commerce if they are set forth in a writing signed by the party against whom enforcement is sought, the contractually specified restraint is supported by at least one legitimate business interest justifying the restraint, and the restrictive covenants are reasonably necessary to protect that interest. Fla. Stat. § 542.335.

  Here, the MDA contains five restrictive covenants, one of which provides:

> **Non-Solicitation.** During the term of this Agreement, and for a period of one (1) year thereafter, the Parties will not directly or through others, solicit, divert or take away from Genterra (or affiliates), or attempt to divert or to take away from Genterra (or its affiliates), the business or patronage of any clients, suppliers, contractors, subcontractors, vendors, referral sources or other business relationships of Genterra (or its affiliates) that were utilized in connection any of the selection, acquisition, entitlement, design, development, management or leasing services contemplated by this Agreement.

(ECF No. 6-1 at 8, § 5.2(a).) Next, the no hire clause provides:

> **No Hire.** During the term of this Agreement, and for a period of one (1) year thereafter, neither Party or its affiliates will directly or through others (a) hire any individual who provided services to the other Party or its affiliates as an employee, consultant, or independent contractor of the Party or its affiliates during the term of this Agreement, or (b) solicit or induce any individual who provided services to the other Party or its affiliates as an employee, consultant or independent contractor of the Party or its affiliates during the term of this Agreement to terminate his or her relationship with the Party and/or such affiliate in order to become an employee, consultant or independent contractor of any other person or entity.

(ECF No. 6-1 at 8, § 5.3.)

  Sanitas argues the amended complaint does not allege a legitimate interest justifying any of the restrictive covenants or any allegation that the restrictive covenants are reasonably necessary to protect a legitimate business interest. (ECF No. 15 at 5.) Further, Sanitas argues that Genterra has not

shown a legitimate business interest to justify precluding Sanitas from soliciting and hiring Perez to construct the New Facilities. (*Id.* at 6.) Therefore, according to Sanitas's motion, Genterra has not sufficiently alleged that Genterra had a legitimate business relationship with Perez. Even if Genterra sufficiently pled a legitimate business interest, Sanitas contends that it did not violate the restrictive covenants set forth in the MDA. This contrasts with Genterra's allegation of a breach of the non-solicitation and no-hire clauses based on Sanitas having sent Perez blueprints relating to the construction of the Florida Facilities. (ECF No. 6 at ¶¶ 45, 76.) However, according to Sanitas, the non-solicitation clause only precludes Sanitas from taking away or attempting to divert or take away from Genterra the "business or patronage" of its "client, supplier, contractor, subcontractor, vendor, referral source, or other business relationships of Genterra (or its affiliates)." (ECF No. 15 at 8.) Sanitas maintains that Genterra has not alleged sufficient facts to show that Perez ever worked for Genterra or that Perez's "business or patronage" on any particular project was taken away because Perez was working for Sanitas. (*Id.*)

The Court disagrees. Genterra alleges that during the development of the Initial Facilities, Genterra employed the services of Perez as a subcontractor. (ECF No. 6 at ¶ 34.) Genterra further alleges that Sanitas solicited, took away, and hired Perez, thereby breaching the non-solicitation and no-hire clauses. (*Id.* at ¶ 76.) In particular, the amended complaint emphasizes that when the relationship between Genterra and Sanitas began to deteriorate, Sanitas engaged in communication with Perez, and propositioned Perez to directly provide development services to Sanitas. (*Id.* at ¶¶ 36–37.) Moreover, Genterra argues the parties expressly agreed that the restrictive covenants "are necessary for the protection of the business and goodwill of the Parties and the Parties agree they are reasonable for such purposes." (ECF No. 6-1 at 7.) In its response, Genterra underscores that an ongoing business's reputation and goodwill are expressly defined in the examples of legitimate business interests provided by the Florida legislature. (ECF No. 28 at 9; *see* Fla. Stat. § 542.335(1)(b)(4)(a) (including "Customer, patient, or client goodwill associated with: an ongoing business or professional practice, by way of trade name" as a delineated legitimate business interest.).) In further support of its claim, Genterra points to *White v. Mederi Caretenders Visiting Servs. of S. Fla., LLC*, 226 So. 3d 774 (Fla. 2017)—a case in which the Florida Supreme Court held that the determination of whether an activity qualifies as a protected legitimate business interest under the statute is inherently a factual inquiry, which is heavily industry and context-specific.

In light of the record and the fact-intensiveness of Sanitas's argument, the Court finds that Genterra's allegations that Sanitas breached the non-

solicitation and no hire restrictive covenants are sufficient to survive a motion to dismiss. As alleged in the amended complaint, Perez was once employed by Genterra. (ECF No. 6 at ¶ 34.) This allegation, in context and at this stage of the proceedings, is sufficient to support the claims that Sanitas violated the non-solicitation and no-hire clauses of the MDA, which expressly preclude Sanitas from hiring or soliciting, during the term of the MDA, any individual who has provided services to Genterra. Additionally, Genterra has adequately pled that it has a legitimate business interest to support the restrictive covenants. Specifically, the amended complaint alleges "the various breaches by Sanitas have caused, and continue to cause, irreparable injury to the goodwill and reputation of Genterra with Prospective Partners and the development and construction industry as a whole." (*Id.* at ¶ 76.) Sanitas argues that the Court cannot find that restrictive covenant breach allegations under Count I are validly supported by the allegation that Genterra's business goodwill has been harmed because the business goodwill allegation only appears under Count II (and not Count I also). The Court disagrees for two reasons. First, Sanitas has not offered any authority supporting its argument, which asks the Court to exalt form high above substance. Second, and more importantly, Count I of the complaint incorporates by reference the Restrictive Covenants provision of the MDA (ECF No. 6 at ¶ 68), which memorializes the parties' agreement that the restrictive covenants "are necessary for the protection of the business and goodwill of the Parties and the Parties agree they are reasonable for such purposes" (ECF No. 6-1 at 8, § 5.5 (emphasis added)).

   Finally, as Genterra points out, whether an activity qualifies as a protected legitimate business interest is a question of fact that should not be determined at this stage of the litigation. *See Visiting Servs. of S. Fla., LLC*, 226 So. 3d 774.

### c. Breach of Confidentiality: Disclosure of Proprietary Information

   Genterra alleges that Sanitas breached the confidentiality clause in the MDA by disclosing Genterra's proprietary information to third parties, including Perez, to be used in the development services for the New Facilities. (ECF No. 6 at ¶ 40.) In its motion, Sanitas contends that there are no fact allegations identifying: (a) what specific information was disclosed by Sanitas, (b) how that information was disclosed, (c) how the information was proprietary, (d) on which of the facilities the information was utilized, or (e) how the information was utilized in connection with development and construction of any of the New Facilities. (ECF No. 15 at 7.) In response, Genterra points to Section 5 of the MDA which describes restrictive covenants between the parties. Particularly, Genterra points to the confidentiality clause, which states

that [e]ach Party . . . agrees to keep strictly confidential all Proprietary Information received by it from a Disclosing Party and to use such Proprietary Information solely as necessary to carry out its duties and obligations under this Agreement." (ECF No. 6-1, § 5.1.)

Under the MDA, proprietary information includes:

> [T]he Disclosing parties past, present, and potential future processes, procedures, policies, strategies, services, technology, specifications, programs, models, financial information and projections, data, know-how, developments, designs, improvements, software programs, products, marketing plans, patient records, physician and vendor lists, referral sources, referral arrangements, references and other business information and opportunities . . . as well as any Preliminary Report, Definitive Proposal delivered in connection herewith, or any other definitive agreement, negotiations or transaction between the Parties or their respective affiliates.

(ECF No. 6-1, § 5.1.)

Such proprietary information is subject to protection from disclosure outside of the parties to the MDA. (ECF No. 28 at 2.) In the amended complaint, Genterra alleges that Sanitas violated the confidentiality clause when it disclosed the proprietary information of Genterra to third parties, including Perez, to be utilized in the development services for the New Facilities. (ECF No. 6 at ¶ 69.) Like the other allegations within Count I, Genterra has met its pleading requirements. Genterra alleges that it provided Sanitas with proprietary information it developed in anticipation of providing development services for the Florida Facilities that Sanitas had initially informed Genterra about. (*Id.* at ¶¶ 43, 49.) Genterra claims that it sent an email to Sanitas stating "[w]e are moving forward with design and permits for . . . Florida Projects as directed and discussed in our meeting today." (*Id.* at ¶ 47.) Genterra allegedly then developed proprietary information for the Florida Facilities and delivered the information to Sanitas in anticipation of providing development services for the Florida Facilities. (*Id.* at ¶ 49.) According to Genterra, Sanitas utilized Genterra's proprietary information and instead employed third parties to develop the Florida Facilities. (*Id.* at ¶ 57.) Genterra's allegations are sufficient to suggest a plausible entitlement to relief for breach of the confidentiality clause.

### B. Count II—Injunction.

Sanitas argues that Count II, which is for injunctive relief, is not a cause of action. The Court agrees with Sanitas and therefore dismisses Count II.

"Any motion or suit for either a preliminary or permanent injunction must be based upon a cause of action. . . . There is no such thing as a suit for a traditional injunction in the abstract. For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6) (failure to state a claim)." *Alabama v. United States Army Corps of Engineers*, 424 F.3d 1117, 1127 (11th Cir. 2005) (citing *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004)); *Blue Water Innovations, LLC v. Fettig*, No. 18-60671-CIV, 2019 WL 1904589, at *2 (S.D. Fla. Mar. 8, 2019) (Scola, J.) (same). "An injunction is a 'remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed—if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise.'" *Alabama*, 424 F.3d at 1127 (quoting *Klay*, 376 F.3d at 1098).

Count II is insufficiently pled as there are no "independent legal rights" that serve as a basis for the injunctive relief sought. To the extent that Genterra seeks injunctive relief in connection with the alleged breaches of the MDA, that request for relief is already set forth in the complaint's prayer for relief. (ECF No. 6 at 17.) Thus, Count II is dismissed with prejudice.

### C. Count III—Breach of the Implied Covenant of Good Faith and Fair Dealing.

Genterra has procedurally abandoned its claim in Count III for breach of the implied covenant of good faith and fair dealing by failing to respond to Sanitas's arguments for dismissal of that claim. (ECF No. 30 at 5 ("Genterra fails to rebut or even address the first argument and therefore concedes the same.").) In moving to dismiss Count III, Sanitas plainly argued that "the Eleventh Circuit has rejected the contention that an independent cause of action exists for breach of the implied covenant of good faith and fair dealing." (ECF No. 15 at 9 (citing *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1316 (11th Cir. 1999) ("We hold that no independent cause of action exists under Florida law for breach of the implied covenant of good faith and fair dealing.")).) Genterra did not respond to this argument at all.

The rules of this Court provide that "each party opposing a motion shall serve an opposing memorandum of law" and that "[f]ailure to do so may be deemed sufficient cause for granting the motion by default." *See* Local R. 7.1(c). "Failure to respond to arguments in a motion to dismiss is a sufficient basis to dismiss such claims by default under this Local Rule." *A1 Procurement, LLC v.*

*Hendry Corp.*, No. 11-23582-CIV, 2012 WL 6214546, at *3 (S.D. Fla. Dec. 13, 2012) (Altonaga, J.); *see also Bute v. Schuller Int'l Inc.*, 998 F.Supp. 1473, 1477 (N.D. Ga. 1998) ("Because plaintiff has failed to respond to this argument or otherwise address this claim, the Court deems it abandoned."). A party who aspires to oppose a motion "must spell out his arguments squarely and distinctly, or else forever hold his peace." *Siegmund v. Xuelian*, Case No. 12-62539, 2016 WL 3186004, at *3 (S.D. Fla. June 8, 2016) (Gayles, J.). Failing to respond to an argument in a motion to dismiss is equal to conceding that argument. *See GolTV, Inc. v. Fox Sports Latin Am. Ltd.*, 277 F. Supp. 3d 1301, 1311 n.7 (S.D. Fla. 2017) (Altonaga, J.). This is an important rule because it gives teeth to the adversarial litigation process. The Court dismisses Count III because Genterra failed to respond to Sanitas's argument that it cannot be a standalone cause of action.

### D. Count IV—Fraudulent Inducement.

Sanitas moves to dismiss Count IV based on the independent tort doctrine. (ECF No. 15 at 11–12.) Genterra argues that it has sufficiently alleged Count IV in a manner that is distinct from the underlying breach of contract claim such that Count IV is not precluded by the independent tort doctrine. (ECF No. 28 at 12.) Upon careful review, the Court agrees with Sanitas.

"Florida's Third District Court of Appeals recently reaffirmed Florida's independent tort doctrine, stating, '[w]hen, as here, a contract has been breached, a tort action lies only for acts independent of those acts establishing the contract's breach.'" *Dorvil v. Nationstar Mortg. LLC*, No. 17-23193-CIV, 2019 WL 1992932, at *17 (S.D. Fla. Mar. 26, 2019) (Martinez, J.) (quoting *Peebles v. Puig*, 223 So. 3d 1065, 1069 (Fla. 3d DCA 2017)). "The rule prohibits claims in tort for damages which are the same as those for breach of contract so as to prevent plaintiffs from recovering duplicative damages for the same wrongdoing." *Kelly v. Lee Cty RV Sales Co.*, No. 18-cv-424, 2018 WL 3126750, at *2 (M.D. Fla. June 26, 2018). This rule "applies to misrepresentations made during the performance of a contract but does not apply to misrepresentations made independently of the contract." *Id.*

Genterra points to no independent action or damages outside of those relevant to the breach of contract. Rather, Genterra only asserts that Sanitas breached the right of first refusal in the MDA when "Sanitas falsely told Genterra that during the Term of the [MDA] Sanitas would not engage a third party to provide Development Services for any Facilities without first presenting the Business Opportunity to Genterra." (ECF No. 6 at ¶ 89.) Thus, Genterra's fraud count is "inextricably intertwined with the alleged breach of contract." *See Temurian v. Piccolo*, No. 18-cv-62737, 2019 WL 1763022 (S.D. Fla. April

22, 2019) (Bloom, J.) (dismissing fraud claims as "inextricable intertwined" with the contract claim). Therefore, Count IV is dismissed.

### E. Count V—Tortious Interference with a Contract or Business Relationship.

Lastly, Sanitas seeks to dismiss Count V based on the independent tort doctrine. (ECF No. 15 at 16.) Particularly, Sanitas asserts that, as a threshold matter, Count V should be dismissed because it fails to allege any tortious conduct independent from a breach of the non-solicitation clause and no hire clause of the MDA. In response, Genterra argues that its claim is proper as it was pled in the alternative to Count I. The Court disagrees with Genterra and finds that Count V is barred by the independent tort doctrine.

Genterra alleges that "Sanitas intentionally and unjustifiably interfered with the business relationship between Genterra and the Subcontractor by soliciting, taking away and hiring the Subcontractor to work for Sanitas directly." (ECF No. 6 at ¶ 100.) Genterra's allegations are directly governed by and arise from the express terms of the non-solicitation and no-hire clause in the MDA. Accordingly, this allegation cannot constitute the basis for a tort claim. Moreover, Genterra's argument that that its tortious interference claim can be pled in the alternative, despite the independent tort doctrine, is unavailing. (ECF No. 28 at 14–15.) Genterra cites to no legal authority to support such proposition. Indeed, it would defeat the basic premise of the independent tort doctrine if the Court were to allow Genterra to proceed with such a tort claim as a duplicative tort alternative to its surviving breach of contract claim. *See Altamonte Pediatric Assocs., P.A. v. Greenway Health, LLC*, No. 8:20-CV-604-T-33JSS, 2020 WL 5350303, at n.4 (M.D. Fla. Sept. 4, 2020) (finding "[i]t would be contrary to the basic premise of the independent tort doctrine to allow such pleadings in the alternative."). Accordingly, Count V is dismissed.

### 4. Conclusion.

For the foregoing reasons, the Court finds that Count I, for breach of the MDA, is adequately stated. The Court finds that Counts II, IV, and V are due to be dismissed. Finally, the Court notes that Genterra has either abandoned or failed to make any convincing arguments for Count III by failing to respond to Sanitas's arguments for dismissal of that claim. For the reasons set forth above, the Court **grants in part,** as to Counts II, III, IV and V, and **denies in part,** as to Count I, Sanitas's motion to dismiss (**ECF No. 15**).

**Done and ordered**, at Miami, Florida, on January 15, 2021.

Robert N. Scola, Jr.
United States District Judge