## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-22402-SCOLA/TORRES

THE GENTERRA GROUP, LLC,

     Plaintiff,

v.

SANITAS USA INC.,

     Defendant.

_____/

## REPORT AND RECOMMENDATION ON MOTION FOR PRELIMINARY INJUNCTION

This matter is before the Court on The Genterra Group, LLC's ("Plaintiff" or "Genterra") motion for preliminary injunction against Sanitas USA Inc. ("Defendant" or "Sanitas"). [D.E. 3]. After the Court denied Defendant's motion to strike the preliminary injunction [D.E. 14, 31], Defendant responded to Plaintiff's motion on November 20, 2020 [D.E. 37] to which Plaintiff replied to on December 11, 2020 [D.E. 43]. Therefore, Plaintiff's motion is now ripe for disposition.[1] After careful consideration of the motion, response, reply, and the record, we **RECOMMEND** that the motion be **DENIED**.

---

[1]      On October 8, 2020, the Honorable Robert N. Scola, Jr. referred the motion to the undersigned Magistrate Judge for disposition. [D.E. 29].

## I.    BACKGROUND

Genterra is in the business of selecting, acquiring, entitling, developing, and leasing real property.  Tim Kinney is its president and owner.  Sanitas operates medical facilities under the trade name "Clinisanitas."  Around 2014, Sanitas began efforts to expand in the United States.  This involved Sanitas leasing existing buildings from the owners and then renovating or retrofitting the buildings for use as medical facilities (the "Lease Model").  Sanitas then decided it wanted to expand through acquiring property before developing it (the "Acquisition Model").

To grow via the Acquisition Model, on February 14, 2017, Genterra and Sanitas entered into an eight-year term Master Development Agreement (the "MDA").  The stated purpose of the MDA is to allow Sanitas "to engage Genterra on an [sic] preference basis to acquire and entitle real property, to design and build medical facilities thereon according to Sanitas' specifications, and thereafter to lease such property and improvements to Sanitas . . .".  [D.E. 6, Ex. 1].  Under the MDA, before Genterra is obligated to acquire property, Sanitas is first to identify geographical areas for development and then notify Genterra, among other things, how many facilities Sanitas wants to be developed in the areas.  After receiving such notice, Genterra is to prepare a preliminary report and analysis containing basic information for each potential facility for Sanitas' review and approval.  Once conditionally approved, Genterra is to submit a definitive proposal for Sanitas' final approval.  With this final approval, Genterra is authorized to acquire, entitle, design, and build

2

("Development Services") a new Clinisanitas facility pursuant to the terms of the definitive proposal.

The MDA includes a "Business Opportunities" provision and various restrictive covenants.  The Business Opportunities provision provides Genterra with a right of first refusal if Sanitas seeks to use Development Services (i.e. acquire, entitle, design, and build) for a new Clinisanitas medical facility anywhere in the United States.  A "Confidentiality" restrictive covenant requires Sanitas to keep Proprietary Information (as defined in the MDA) of Genterra strictly confidential.  A "Non-Circumvention" covenant requires Sanitas not to use any preliminary report or definitive proposal prepared by Genterra in accordance with the MDA to engage another party to provide acquisition, entitlement, design, development or leasing services.

A "Non-Solicitation" covenant requires Sanitas not to take away any business relationships of Genterra that were utilized in connection with any of the services contemplated by the MDA.  A "No Hire" covenant prevents Sanitas from hiring an individual who provided services to Genterra as an employee or independent contractor during at least the eight-year term of the MDA.

In addition, a "Right to Injunction" clause in the restrictive covenant section states:

> [t]he Parties expressly agree that each shall be entitled to equitable relief in the event of, or to prevent, a breach of Section 5 of this Agreement. Resort to such equitable relief, however, shall not be construed as a waiver of any other rights or remedies that a Party may have for damages or otherwise.

*Id.*

To date, however, Genterra has never acquired or entitled any property for Sanitas under the MDA. The parties instead have only worked together on projects following Sanitas' Lease Model. Three of these projects were in New Jersey, two completed and one abandoned (the "New Jersey Facilities"). To govern the development of the New Jersey Facilities, the parties entered into a master agreement (the "New Jersey Agreement"). The parties entered into two individual project agreements for the two completed facilities that were project specific. Daniel Perez ("Mr. Perez") and his company, Perez McGee USA (collectively, the "Subcontractor") was hired to construct the New Jersey Facilities. [2]

Sanitas also engaged Genterra for some initial planning work related to developing four facilities in the Orlando, Florida area (the "Florida Facilities"). Evidenced by emails between Mr. Kinney and Sanitas, this included Sanitas first sending Genterra blueprints. But while Genterra was working on the design and permit process for the Florida Facilities, Sanitas allegedly opted to engage another developer for the Florida Facilities because Genterra could not meet Sanitas' desired

---

[2] Genterra alleges in a generic fashion that the parties worked together on three facilities under the MDA. However, based on the declaration of Mr. Kinney [D.E. 43, Ex. 1] and a demand letter from Genterra [D.E. 6, Ex. 10] and confirmed by the declarations of Alberto Ospina, a vice president of Sanitas, and Mr. Perez [D.E. 36, Ex. A, B], the three facilities referenced in the amended complaint are clearly the New Jersey Facilities. We also note that the demand letter references four projects in New Jersey and Mr. Kinney references a project in Montgomery that was abandoned in his declaration. It is unclear if the Montgomery project is a fourth project in New Jersey and if and how it is relevant to Genterra's claims.

completion deadline for the Florida Facilities. The Subcontractor was hired to construct at least one of the Florida Facilities.

Genterra now alleges Sanitas has breached the MDA multiple ways. First, Sanitas has developed (or is in the process of developing) at least twelve new medical facilities in Texas, Florida (including the Florida Facilities), and elsewhere in the United States (the "New Facilities") without first offering the work to Genterra. Second, Genterra alleges that the Subcontractor was employed by it during the construction of the New Jersey Facilities and Sanitas hired the Subcontractor to work on the New Facilities. Third, Sanitas has allegedly utilized Genterra's Proprietary Information produced and provided for the Florida Facilities to develop the New Facilities.

Before bringing this action, on January 6, 2020, Genterra sent Sanitas a letter threatening litigation for these breaches and demanding immediate payment of lost profits. In the letter, Genterra claims to have lost at least $1,275,645.00 in profits from each New Facility and demands $14,032,095.00 from Sanitas for its total losses related to not being hired to develop the New Facilities. The letter further claims that Genterra's potential lost profits could exceed $382,693,500.00 if Sanitas continues to develop facilities without hiring Genterra during the term of the MDA.

After Sanitas failed to meet the demands, Genterra filed a complaint in this Court on June 10, 2020. [D.E. 1]. The next day, it moved for a preliminary injunction. [D.E. 3]. After being ordered by the Court, and before the motions were fully briefed, Genterra filed an amended complaint on June 18, 2020 [D.E. 6] to clarify that the

Court had subject-matter jurisdiction over the action.  On August 25, 2020, Mr. Kinney filed an affidavit to verify the allegations in the amended complaint and motion for preliminary injunction.  [D.E. 16].  The amended complaint pleads four causes of action against Sanitas: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) fraudulent inducement, and (4) tortious interference with a contract or business relationship.  On January 15, 2021, the Court granted in part and denied in part Sanitas' motion to dismiss the amended complaint by dismissing all claims against Sanitas except the breach of contract claim.  [D.E. 47].

Genterra's mandatory preliminary injunction seeks to stop Sanitas from:  (1) "building, developing, leasing or entering into a contract or agreement with any third party to build, develop or lease any new medical facility without first offering the new project to Genterra pursuant to the terms of" the MDA, and (2) "the building and development, and ceasing the operation of any facility that was made operational since February 14, 2017 except those facilities built by Genterra."  [D.E. 3].  In other words, if the second request by Genterra was granted, the Court would be shutting down at least twelve medical facilities that are currently or are about to be operating.

In response, Sanitas attacks the motion for preliminary injunction several ways: it (1) fails to establish a valid factual predicate for a prohibitory or mandatory injunction, (2) impermissibly seeks an injunction based on a personal services contract, (3) is not applicable because the MDA was first breached by Genterra and abandoned by the execution of the New Jersey Agreement, (4) fails to satisfy the

burden of persuasion on the four requisite factors, and (5) it is not narrowly tailored and does not preserve the status quo.

## II.    STANDARD OF REVIEW

A moving party must demonstrate the following elements to obtain a preliminary injunction: (1) substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) the threatened injury to the movant outweighs the potential harm to the defendant; and (4) that injunction will not disserve the public interest. *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002); *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001). A preliminary injunction is "an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the 'burden of persuasion' as to the four prerequisites." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1988); *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) ("Because a preliminary injunction is an extraordinary and drastic remedy, its grant is the exception rather than the rule.") (internal quotation omitted).

The goal of a preliminary injunction is to prevent irreparable harm and to "preserve the district court's power to render a meaningful decision after a trial on the merits." *Canal Auth. of the State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974). Of the four prerequisite elements a moving party must show before entry of a preliminary injunction, "the first factor, establishing a substantial likelihood of success on the merits, is most important." *ABC Charters, Inc. v. Bronson*, 591 F. Supp. 2d 1272, 1294 (S.D. Fla. 2008). "If the movant is unable to establish a likelihood

of success on the merits, a court need not consider the remaining conditions prerequisite to injunctive relief." *Johnson & Johnson Vision Care, Inc. v. 1-800-Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002) (citing *Pittman v. Cole*, 267 F.3d 1269, 1292 (11th Cir. 2001)). "Significantly, even if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Siegel*, 234 F.3d at 1176.

When an injunction does more than preserve the status quo, however, an even stronger showing is required. *See, e.g., Miami Beach Fed. Sav. & Loan Ass'n v. Callander*, 256 F.2d 410, 415 (5th Cir. 1958) ("A mandatory injunction . . . especially at the preliminary stage of proceedings, should not be granted except in rare instances in which the facts and law are clearly in favor of the moving party."); *United States v. Board of Educ. of Green County, Miss.*, 332 F.2d 40, 46 (5th Cir. 1965) ("[M]andatory injunctions are rarely issued and interlocutory mandatory injunctions are even more rarely issued, and neither except upon the clearest equitable grounds").

### III.   ANALYSIS

Our analysis begins and ends with the first prong of the injunction standard: whether Genterra has shown a substantial likelihood of success. But before we even get there, Sanitas asks the Court to determine whether the requested preliminary injunction is supported by competent evidence. Specifically, Sanitas asserts the motion and the amended complaint contain vague and conclusory allegations that are supported by a single, and equally conclusory, affidavit from Mr. Kinney. Because

Genterra seeks a mandatory injunction, the facts clearly need to be in its favor.  *See Miami Beach Fed. Sav. & Loan Ass'n*, 256 F.2d at 415.  "Vague or conclusory affidavits are insufficient to satisfy the plaintiff's burden [in obtaining an injunction]".  *Palmer v. Braun*, 155 F. Supp. 2d 1327, 1331 (M.D. Fla. 2001) *aff'd*, 287 F.3d 1325 (11th Cir. 2002) (internal citations omitted).

Standing alone, we agree that Mr. Kinney's affidavit is clearly conclusory and does not support the extraordinary remedy of a mandatory injunction.  Genterra however, supports its allegations by also attaching to the amended complaint the MDA, emails exchanged between Genterra, Sanitas, and the Subcontractor, invoices related to the Subcontractor, and screen shots of an online map that show the locations of the New Facilities.  In its reply, Genterra also attaches a more detailed declaration from Mr. Kinney.  It goes without saying that this additional declaration could be totally disregarded given that it was only presented in a reply.  But putting that procedural failing aside, taken together, this evidence still falls short of supporting Genterra's claims and even contradicts Genterra's allegations.  So even if we consider all the evidence presented in the record, we cannot find that Genterra has met its initial burden to warrant injunctive relief.

For instance, to show that Sanitas breached the MDA by not offering Genterra its right of first refusal for the New Facilities, there needs to be evidence that Sanitas hired a third party to provide Development Services in developing the New Facilities.  Although Genterra provides screen shots of where the New Facilities are located, this

is insufficient in showing that Sanitas has hired a developer to acquire and entitle real property and to design and build a medical facility thereon.

Relatedly, the emails attached to Genterra's amended complaint do not show that Genterra's Proprietary Information was used by Sanitas for the New Facilities. And the emails do not even show Sanitas was in possession of Genterra's Proprietary Information.  Particularly, the emails demonstrate that Sanitas provided Genterra with blueprints and that Genterra was in the process of designing and permitting the Florida Facilities.  Nothing in the emails show Genterra sent Sanitas Proprietary Information.  Without any evidence, Genterra is thus left with bald allegations that non-specific Genterra Proprietary Information was improperly utilized by Sanitas.

The purported evidence that the Subcontractor was a Genterra employee fares little better.  Genterra relies on various Subcontractor invoices to establish that the Subcontractor worked for Genterra until Sanitas allegedly hired away the firm for other projects.  The invoices say no such thing.  They only show that the Subcontractor was paid by Genterra during the construction of the New Jersey Facilities.  This is unsurprising given that Genterra managed the construction for Sanitas on those projects.  To that point, Mr. Perez, in his declaration, states that he worked for Sanitas on the New Jersey Facilities but was not initially paid directly by Sanitas because other entities administered the construction budget.  Even more telling is the lack of any evidence that the Subcontractor and Genterra had a written agreement between them and Genterra never worked with the Subcontractor on any project besides a Sanitas' project.

In its reply, Genterra declaratively states its claims are supported by competent evidence. It then lists facts that Sanitas allegedly concedes to in its response: (1) Sanitas entered into the MDA, (2) it prohibits Sanitas from hiring another developer before it first offers a Business Opportunity to Genterra, (3) it prohibits Sanitas from diverting or taking away "any business relationship" that Genterra had with a third party, (4) Sanitas used the Subcontractor to develop the New Jersey Facilities and hired the Subcontractor to work on some of the New Facilities, (5) Sanitas built numerous new facilities without offering the work to Genterra, and (6) Sanitas never terminated the MDA. But even if this all true, it is irrelevant to this motion seeking extraordinary relief.

Again, Genterra must produce some evidence that the New Facilities were built using Development Services, Sanitas improperly utilized its Proprietary Information, or the Subcontractor first worked for it. None of this was provided. The facts therefore do not clearly support granting a very rare mandatory preliminary injunction. *See Miami Beach Fed. Sav. & Loan Ass'n*, 256 F.2d at 415. Especially one that seeks to shut down at least twelve medical facilities that are currently or are about to be operating in the middle of a pandemic in which medical facilities are overrun.

In sum, without competent evidence, the Court finds that Genterra has not shown a substantially likelihood to succeed on the merits of its claims.[3] *See Johnson*

---

[3]    This is further evidenced by the Court dismissing all claims against Sanitas except for the breach of contract claim.  [D.E. 47].

*& Johnson Vision Care, Inc.*, 299 F.3d at 1247. With that said, based on the allegations and evidence before us, the MDA still appears to be in full force and effect and not a personal services contract.[4] If the MDA is thus not terminated or expires beforehand, Genterra may still potentially bring additional claims and renew its

---

[4]     We find Sanitas' arguments that the MDA is (1) a personal services contract, (2) was breached by Genterra, and (3) was abandoned by the execution of the New Jersey Agreement unavailing for the following respective reasons:
        (1) "Generally a personal service contract is one which contemplates performance of contracted-for-duties involving the exercise of special knowledge, judgment, taste, skill or ability. . . . [t]ypical personal service contracts include a contract to paint a picture, and a contract between an author and his publisher." *In re Fastrax, Inc.*, 129 B.R. 274, 278 (Bankr. M.D. Fla. 1991). Sanitas contends the MDA, a development agreement, is a personal services contract based on the case, *Security Pacific Mortg. & Real Estate Servs., Inc. v. Canadian Land Co.*, 690 F. Supp. 1214 (S.D.N.Y. 1988). This case is far from applicable here. Although the contract at the center of this New York case from over thirty years ago uses the word "development" in its title, it was a property management agreement for the historic Crown Building in Manhattan. *Id.* at 1216. Moreover, the New York court did not analyze if a breach of a personal service contract should result in the issuance of an injunction but if it should run with the land and bind successors or assigns. *Id.* at 1221. Sanitas' thus fails to support its novel argument that a purely development agreement (i.e. an agreement to acquire land, entitle it, and build a property thereon) is a personal services contract and not subject to an injunction.
        (2) Sanitas contends that Genterra first breached the MDA by never acquiring or entitling any properties. This argument fails for a simple reason. The MDA does not require nor authorize Genterra to acquire anything unless it first receives approval from Sanitas. Because Sanitas does not claim it provided Genterra with such prior approval, Genterra, by operation of the MDA, never had an obligation nor authority to acquire or entitle any property.
        (3) Sanitas argues that the parties abandoned the MDA when they entered into the New Jersey Agreement. The MDA, however, can only be terminated by notice or modified by a mutually agreed-upon signed writing. Sanitas does not allege either of these requirements has occurred. *See Kennedy v. Seschenes*, 2017 WL 2223050 at *8 (S.D. Fla. May 19, 2017) ("The Court has neither the authority, nor the inclination to re-write the terms of the contract that Kennedy voluntarily negotiated and signed."). Further, the New Jersey Agreement required Genterra to lease the facilities, not acquire them like the MDA contemplates. The agreements are thus in harmony. *See Gustafson v. Jensen*, 515 So. 2d 1298, 1301 (Fla. 3d DCA 1987) (requiring a party's actions to be inconsistent with the contract to show the contract was abandoned).

motion for an injunction if Sanitas fails to present Genterra with its right of first refusal if it decides to use Development Services.

While Genterra "may very well prevail in the present action in the end," it has not met its heavy burden to warrant a preliminary injunction. *Oce North Am., Inc. v. Caputo*, 416 F. Supp. 2d 1321, 1329 (S.D. Fla. 2006). Thus, the motion should be **DENIED**.

## IV.   CONCLUSION

In the end, the purpose of a preliminary injunction "is merely to preserve the relative positions of the parties until a trial on the merits can be held." *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Because entry of a preliminary injunction constitutes "an extraordinary and drastic remedy" not to be granted unless a party clearly establishes all of the prerequisites supporting such relief, *Robertson*, 147 F.3d at 1306, we **RECOMMEND** that the motion be **DENIED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the Honorable Robert N. Scola, United States District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir.

Feb. 2, 2017); *Cooley v. Comm'r of Soc. Sec.,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016)

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 19th day of January, 2021.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge

14